IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DEBBIE GENSMAN,                          3:10-CV-1569-BR

       Plaintiff,

                                OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


MERRILL SCHNEIDER
Schneider Law Offices
P.O. Box 14490
Portland, OR 97293

       Attorney for Plaintiff


S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1  -  OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**BRETT EDWARD ECKLEBERG**
**WILLY M. LE**
Special Assistants United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-3748

        Attorneys for Defendant


**BROWN, Judge.**

        Plaintiff Debbie Gensman seeks judicial review of a final
decision of the Commissioner of the Social Security
Administration (SSA) in which he denied Plaintiff's application
for Disability Insurance Benefits (DIB)under Title II and
disabled widow benefits and Supplemental Security Income (SSI)
under Title XVI of the Social Security Act.  This Court has
jurisdiction to review the Commissioner's decision pursuant to
42 U.S.C. § 405(g).

        For the reasons that follow, the Court **REVERSES** the decision
of the Commissioner and **REMANDS** this matter pursuant to sentence
four of 42 U.S.C. § 405(g) for further administrative proceedings
consistent with this Opinion and Order.


## <u>ADMINISTRATIVE HISTORY</u>

        On April 28, 2005, Plaintiff filed applications for SSI and
DIB alleging a disability onset date of July 26, 1995.     Tr.

2   -  OPINION AND ORDER

29, 31, 86-94.[1]  The record reflects Plaintiff also filed for disabled widow benefits on June 17, 2005.  Tr. 30.  Her applications were denied initially and on reconsideration. Tr. 29-34, 35-39, 45-53.  An Administrative Law Judge (ALJ) held a hearing on October 6, 2008, and a supplemental hearing on September 2, 2009.  Tr. 287-349.  Plaintiff was represented by an attorney at both hearings.  Tr. 287, 334.  Plaintiff testified at the initial hearing, and a Vocational Expert (VE) testified at the supplemental hearing.  Tr. 287-349.

An ALJ issued an opinion on September 24, 2009, and found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 16-28.  That decision became the final decision of the Commissioner on November 3, 2010, when the Appeals Council denied Plaintiff's request for review.  Tr. 5-7.

On December 28, 2010, Plaintiff filed her Complaint seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was fifty-three years old at the time of the initial hearing.  Tr. 300.  Plaintiff did not finish high school but obtained a high-school equivalency degree.  Tr. 301.  She has performed past work as a parks manager.  Tr. 341.

---

[1] Citations to the official transcript of record filed by the Commissioner on August 23, 2011, are referred to as "Tr."

Plaintiff has been diagnosed with chronic back and joint pain, chronic pain syndrome, osteoporosis/osteopenia, recurrent rhinitis or sinusitis, depression, chronic fatigue, and dysthymic disorder. Tr. 137-38, 145, 166, 173, 203, 228, 233-34, 261, 272. Plaintiff has a history of carpal-tunnel syndrome with surgical release, fractures of her upper extremities with surgical correction, torn meniscus in her right knee with arthroscopic repair, sinus pressure and facial pain with a bilateral endoscopic ethmoidectomy, and a severed third digit with surgical reattachment and resulting deformity. Tr. 137-38, 189-207, 233-34, 239.

Plaintiff alleges she is disabled due to pain in her knees, back, neck, head, arms, and hands; difficulty with her balance and vision; fatigue; and anxiety. Tr. 105, 116, 305-18. Plaintiff alleges her impairments limit her ability to walk, to sit, to stand, to lift, to bend, to squat, to reach, to kneel, to use her hands, to concentrate, and to complete tasks. Tr. 305-18.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After reviewing the medical records, the Court adopts the ALJ's summary of the medical evidence. *See* Tr. 19-26.


## **STANDARDS**

The initial burden of proof rests on the claimant to

4  -  OPINION AND ORDER

establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004
(9th Cir. 2005). To meet this burden, a claimant must
demonstrate her inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of
developing the record. *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial
evidence means more than a mere scintilla, but less than a
preponderance, i.e., such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Robbins v.
Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal
quotations omitted).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001). The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision. *Robbins,*

466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

## I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. §§ 404.1520, 416.920.  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a

7  -  OPINION AND ORDER

finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

The ALJ concluded Plaintiff met the nondisability requirements for disabled widow's benefits. Tr. 19.

In his evaluation of Plaintiff's DIB and SSI applications, the ALJ found as follows:

At Step One, the ALJ found Plaintiff has not engaged in

substantial gainful activity since July 26, 1995.  Tr. 19.

At Step Two, the ALJ found Plaintiff has the following severe impairments:  a dysthymic disorder, a history of carpal-tunnel syndrome, and a "right upper extremity third digit contracture.".  Tr. 19.  The ALJ concluded Plaintiff's sinusitis and low-back impairments were not severe.  Tr. 19-20.

At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals a Listed Impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 20-21.  The ALJ found Plaintiff has the RFC to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that

> she is limited in frequent handling and
> fingering of the right upper extremity due to
> third digit contracture; has mild
> restrictions in her abilities to understand,
> remember, and carry out complex instructions;
> has mild restrictions in her ability to make
> judgments on complex work-related decisions.
> She also has mild restrictions in her ability
> to work appropriately with the public,
> supervisors, and coworkers and has mild
> restrictions in her ability to respond
> appropriately to usual work situations and to
> changes in the routine work setting.

Tr. 21 (Administrative Record citations omitted).

At Step Four, the ALJ concluded Plaintiff is able to perform her past relevant work as a parks manager.  Tr. 27.

At Step Five, the ALJ also concluded Plaintiff has a sufficient RFC to perform jobs that exist in significant numbers

9  -  OPINION AND ORDER

in the national economy.  Tr. 27-28.  Specifically, the ALJ found
Plaintiff has the ability to perform jobs that require light work
such as sales clerk/photo finisher and as an interviewer of
dealer accounts.  Tr. 28.

**DISCUSSION**

Plaintiff contends the ALJ erred by (1) failing to find at
Step Two that Plaintiff's chronic fatigue syndrome, sinusitis,
and chronic pain syndrome are severe impairments; (2) failing to
provide legally sufficient reasons for discrediting Plaintiff's
subjective-symptom testimony; (3) improperly discrediting the
opinions of Plaintiff's treating physicians Janet Kelly, M.D.,
Ira Weintraub, M.D., and Duane Lundeberg, M.D.; (4) failing to
find Plaintiff's impairments equal Listing 1.04A for spinal
disorders; and (5) failing to include all of Plaintiff's
functional limitations in formulating the hypothetical posed to
the VE.

**I.   Step Two Severity.**

Plaintiff contends the ALJ erred when he concluded
Plaintiff's sinusitis, chronic fatigue syndrome, and chronic pain
syndrome are not severe impairments at Step Two of the sequential
analysis.  *See* Tr. 19-20.

As noted, at Step Two the claimant is not disabled if the
Commissioner determines the claimant does not have any medically

10  -  OPINION AND ORDER

severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.920(a)(4)(ii). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.921(a). *See also Ukolov*, 420 F.3d at 1003. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.921(a), (b). Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *Id.*

The Step Two threshold is low:

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work . . . . [T]he severity regulation is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working.

SSR 85-28, at *2 (Nov. 30, 1984)(internal quotations omitted). The Ninth Circuit describes Step Two as a "*de minimis* screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. *See also Webb v. Barnhart*, 433 F.3d 683, 686-88 (9th Cir.

11  -  OPINION AND ORDER

2005).  "Great care should be exercised in applying the not
severe impairment concept."  SSR 85-28, at *4.

**A.   Sinusitis.**

Based on his review of the evidence, the ALJ concluded
Plaintiff's sinusitis waxes and wanes, does not meet the 12-month
durational requirement, and has not resulted in any documented
vocational limitations.  Tr. 19.  The ALJ noted Plaintiff did not
list sinusitis as a disabling condition in her disability reports
nor mention the condition to the consultative examiners in the
records.  Tr. 19.

Plaintiff contends the ALJ erred when he concluded
Plaintiff's sinusitis is not a severe impairment.  Specifically,
Plaintiff points to the treatment records of Dr. Lundeberg from
1998 to 2006 during which time he treated Plaintiff's sinusitis.
*See* Tr. 225-52.

The record reflects Plaintiff's sinusitis, in fact, waxed
and waned in response to medications that Plaintiff took,
particularly during 2004-06.  Tr. 225-52.  Dr. Lundeberg often
attributed Plaintiff's symptoms, such as her complaints of facial
pain, to other problems such as Plaintiff's smoking, fatigue, and
dental issues.  *See, e.g.*, Tr. 225, 228-29.  In addition, Dr.
Lundeberg routinely reported normal findings on examination of
Plaintiff's "resolving sinusitis," which is also reflected in the
CT scans and radiographs of Plaintiff's sinuses showing normal or

12  -  OPINION AND ORDER

unremarkable results.  Tr. 185, 225, 227, 230-32, 243-45.  As the
ALJ noted, Plaintiff did not report any disabling symptoms from
her sinusitis to the ALJ at the hearing or to the consulting
examiners, who also did not make any findings with respect to
that condition.  Tr. 137-41, 269-72, 287-32.  Moreover,
Plaintiff's treating physicians, Drs. Weintraub and Kelly, did
not mention Plaintiff's sinusitis in their disability opinions.
Tr. 166-69, 173-76.

    The Court concludes on this record that the ALJ provided
legally sufficient reasons supported by substantial evidence in
the record to conclude that Plaintiff's sinusitis is a nonsevere
impairment.

    **B.    Chronic Fatigue Syndrome.**

    Plaintiff also contends the ALJ erred when he failed to find
Plaintiff suffers from severe chronic fatigue syndrome (CFS).
Specifically, Plaintiff points to the treatment notes of
Dr. Weintraub, Plaintiff's treating physician for twenty years,
and Dr. Kelly, Plaintiff's treating physician for several years,
as support for her diagnosis of CFS.  *See* Tr. 166, 173.  The
Court, however, notes both physicians stated Plaintiff suffers
from "chronic fatigue," which is a symptom of rather than a
diagnosis of CFS.  Tr. 166, 173.  In fact, Plaintiff did not
identify any physician in the record who made an actual diagnosis
of CFS despite reports by several physicians that Plaintiff

13  -  OPINION AND ORDER

suffers from fatigue.

Although Plaintiff contends on the basis of criteria from the Centers for Disease Control website that she has CFS, that document is not in the record.  In addition, Plaintiff relies on SSR 99-2p to support her argument that "persistent muscle tenderness over a period of at least 6 consecutive months establishes the existence of a medically determinable impairment for individuals with CFS," but Plaintiff's reliance on SSR 99-2p presumes a diagnosis of CFS.  SSR 99-2p establishes numerous criteria for diagnosing CFS that requires the existence of medical signs or laboratory findings after other causes of a claimant's fatigue have been ruled out.  SSR 99-2p, at *1-2 ("The Act and regulations further require that an impairment be established by medical evidence that consists of signs, symptoms, and laboratory findings, and not only by an individual's statement of symptoms.").  As an example, SSR 99-2p provides the following laboratory findings that may establish a diagnosis of CFS:

> An elevated antibody titer to Epstein-Barr virus (EBV) capsid antigen equal to or greater than 1:5120, or early antigen equal to or greater than 1:640;
>
> An abnormal magnetic resonance imaging (MRI) brain scan;
>
> Neurally mediated hypotension as shown by tilt table testing or another clinically accepted form of testing; or,

14  -  OPINION AND ORDER

> Any other laboratory findings that are
> consistent with medically accepted clinical
> practice and are consistent with the other
> evidence in the case record; for example, an
> abnormal exercise stress test or abnormal
> sleep studies, appropriately evaluated and
> consistent with the other evidence in the
> case record.

*Id.*, at *3.

None of Plaintiff's physicians evaluated Plaintiff for CFS consistent with the requirements of SR 99-2p nor identified any of the above laboratory tests as establishing Plaintiff has CFS.

Accordingly, he Court concludes on this record that the ALJ provided legally sufficient reasons supported by substantial evidence in the record to conclude that Plaintiff does not suffer from CFS.

**C.   Chronic Pain Syndrome.**

Plaintiff also contends the ALJ erred when he failed to find Plaintiff's chronic pain syndrome is a severe impairment. Plaintiff identifies the treatment notes of Dr. Kelly in which she diagnoses Plaintiff with chronic pain syndrome. *See* Tr. 261. Plaintiff also cites to SSR 03-2p relating to "Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrom" to support her contention that she established the existence of chronic pain syndrome. The record, however, does not reflect Plaintiff was diagnosed by any physician with either of the syndromes discussed in SSR 03-2p. Nevertheless, Plaintiff is correct that the ALJ

15 - OPINION AND ORDER

did not address Plaintiff's diagnosis of chronic pain syndrome
nor make any express determination as to its severity.  Tr. 19-
20.  The record reflects Drs. Kelly, Weintraub, and Lundeberg
each refer to Plaintiff's chronic pain, and, therefore, the ALJ
erred when he failed to address those findings.  *See* Tr. 166,
225, 173-76.  In addition, Plaintiff points out that the ALJ did
not address other impairments diagnosed by Plaintiff's treating
physicians that relate to Plaintiff's pain symptoms and physical
impairments such as her osteoperosis/osteopenia and arthritis.
*See* Tr. 141, 166, 173, 272.

     To establish reversible error at Step Two, the Ninth Circuit
has held that a claimant must show the ALJ's assessment of her
RFC did not include the Step Two impairments.  *See Lewis v.
Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

     In his assessment of Plaintiff's RFC, the ALJ did not find
any postural limitations or any resulting lower extremity
limitations that could result from Plaintiff's chronic pain
syndrome, osteoporosis/osteopenia, or arthritis as described by
Plaintiff's treating physicians in their opinions.  *See* Tr. 166-
69, 173-76.  For example, even though the ALJ discounted
Plaintiff's low-back and knee impairments as lacking objective
support in the record, a finding that Plaintiff suffers from
chronic pain syndrome, arthritis, and/or osteoporosis/osteopenia
may alter the ALJ's conclusions.  In any event, the ALJ cannot

16  -  OPINION AND ORDER

ignore these diagnoses in assessing the severity of Plaintiff's impairments when Plaintiff has only a *de minimis* burden at Step Two to establish the existence of a severe impairment.  The ALJ, therefore, committed reversible error.

**II.  Plaintiff's Credibility.**

Plaintiff also contends the ALJ erred by failing to give clear and convincing reasons for discrediting Plaintiff's credibility.

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but concluded Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms are not credible.  Some of the ALJ's bases for discrediting Plaintiff's subjective symptom testimony would be undermined if the ALJ found Plaintiff has additional severe impairments that underlie her complaints of disabling pain.  For example, the ALJ refers to Plaintiff's use of high doses of methadone as unnecessary and out of proportion with Plaintiff's impairments. Tr. 25-26.  In addition, the ALJ emphasized the medical evidence does not support Plaintiff's alleged level of pain.   Tr. 26.

Accordingly, the Court concludes the ALJ could reach different conclusions if he were to determine at Step Two that Plaintiff suffers from chronic pain syndrome, osteoporosis, and/or arthritis because such impairments may explain Plaintiff's

17  -  OPINION AND ORDER

statements concerning her level of pain and resulting need for
strong pain medication.

**III. Plaintiff's Treating Physicians.**

Plaintiff contends the ALJ erred by failing to give
controlling weight to the opinions of or to provide specific and
legitimate reasons for rejecting the opinions of Drs. Kelly,
Weintraub, and Lundeberg, Plaintiff's treating physicians.
Specifically, Plaintiff points to her physicians' diagnoses of
chronic pain and associated impairments such as osteoporosis/
osteopenia and arthritis.  Plaintiff contends the ALJ did not.

An ALJ may reject a treating physician's opinion when it is
inconsistent with the opinions of other treating or examining
physicians if the ALJ makes "findings setting forth specific,
legitimate reasons for doing so that are based on substantial
evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028,
1042 (9th Cir. 2007)(quoting *Orn v. Astrue*, 495 F.3d 625, 632
(9th Cir. 2007)).  When the medical opinion of a treating
physician is uncontroverted, however, the ALJ must give "clear
and convincing reasons" for rejecting it.  *Lester*, 81 F.3d at
830-32.

The Court notes the primary basis for the ALJ's decision to
give "little weight" to Plaintiff's treating physicians was the
conflicting opinions of consulting physicians Seth Tuwiner, M.D.,
and Tatsuro Ogisu, M.D., to which the ALJ assigned "greater

18  -  OPINION AND ORDER

weight." Tr. 23-26, 137-41, 269-78. Despite the greater weight
assigned to those opinions, the ALJ does not explain why he did
not credit, for example, Dr. Tuwiner's diagnosis of arthritis in
both of Plaintiff's hands and right knee or Dr. Ogisu's diagnosis
of osteopenia/osteoporosis and osteoarthritis, which echo the
conclusions of Plaintiff's treating physicians rather than
contradict them. Tr. 141, 272-73. Furthermore, the ALJ
discredited the functional capacity and disability assessments of
Drs. Weintraub and Kelly based in part on a lack of objective
bases for their assessments. Tr. 23-24. The ALJ's conclusion
may change if the ALJ determines there are additional underlying
explanations for Plaintiff's pain and physical limitations.

    In particular, the ALJ discredits Dr. Weintraub's
conclusions concerning Plaintiff's physical impairments based in
part on the ALJ's determination that "Dr. Weintraub is a
psychiatrist." Tr. 25. The Court notes, however, that the
record appears to reflect Dr. Weintraub is an orthopedist who has
treated Plaintiff for her "multiple orthopedic abnormalities" for
approximately 20 years. Tr. 173-76, 216, 317. Thus,
Dr. Weintraub's opinion may carry greater weight than the ALJ
assigned with respect to Dr. Weintraub's assessment of
Plaintiff's physical impairments, including chronic pain and
osteoporosis. *See* Tr. 173-76.

    Accordingly, the Court concludes the ALJ could reach

19   -  OPINION AND ORDER

different conclusions regarding the weight to be assigned to Plaintiff's treating physicians if he were to make findings of additional severe impairments at Step Two.

## IV. Listing 1.04A Equivalence.

Plaintiff contends the ALJ erred at Step Three by failing to find Plaintiff's impairments equal certain Listed Impairments. Plaintiff first contends her CFS should be assessed for equivalency with a Listed Impairment. As the Court has already concluded, however, this record does not support a diagnosis of CFS. Furthermore, Plaintiff did not present the ALJ (or the Court) with any plausible theory for equivalence as required. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Plaintiff also contends the impairments of her upper and lower extremities in combination equal Listing 1.04A for spinal disorders because she is precluded from using both lower and upper extremities for an extended period. Plaintiff, however, has not provided any plausible theory as to how her impairments equal an "extreme loss of function," "immobility," or an "inability to ambulate" as required by Listings under 1.00 for Musculoskeletal Disorders. 20 C.F.R. pt. 404, subpt. P, app. 1.

On this record the Court concludes the ALJ did not err when he did not consider the equivalence of Plaintiff's CFS or upper and lower extremity impairments to Listed Impairments.

## V. Hypothetical to the VE.

Finally, based on Plaintiff's foregoing assertions of error by the ALJ, Plaintiff contends the ALJ's hypothetical to the VE was not supported by the record.  Having found the ALJ made reversible error at Step Two that could affect his findings at Step Three and, therefore, his assessment of Plaintiff's RFC, the Court concludes the ALJ's error at Step Two may also alter his findings at Step Four and Five.

## REMAND

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Id.* at 1179.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination

21  -  OPINION AND ORDER

> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

On this record the Court concludes further proceedings are necessary.  It is not clear on this record whether the ALJ would have found Plaintiff could not perform her past relevant work or other work that exists in significant numbers in the national economy if he had determined Plaintiff, in fact, suffers from additional severe impairments at Step Two and that those impairments should be included in Plaintiff's RFC.

Based on the foregoing, the Court concludes a remand for further proceedings consistent with this Opinion and Order is required to permit the ALJ (1) to determine whether Plaintiff has additional medically determinable impairments and, if so, whether those impairments would result in additional limitations in Plaintiff's RFC; (2) to reconsider Plaintiff's credibility with respect to her subjective descriptions of the intensity, persistence, and limiting effects of her impairments in light of any additional severe impairments the ALJ may conclude are medically determinable; (3) to reexamine the conclusions reached by Drs. Kelly, Weintraub, and Lundeberg in light of any additional severe impairments the ALJ may conclude are medically

22  -  OPINION AND ORDER

determinable; and (4) to reconsider whether any new findings the ALJ may make at Steps Two and Three affect the ALJ's determination as to whether Plaintiff can return to her past relevant work or is capable of performing other work that exists in significant numbers in the national economy.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 7th day of June, 2012.

/s/ Marco Hernandez for

_____
ANNA J. BROWN
United States District Judge

23  -  OPINION AND ORDER